UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
SANDRA BROWN,

                         Plaintiff,

           -against-                        MEMORANDUM & ORDER
                                            12-CV-1488(JS)(GRB)
NORTHROP GRUMMAN CORPORATION,

                         Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:          Saul D. Zabell, Esq.
                        Zabell & Associates, P.C.
                        4875 Sunrise Highway, Suite 300
                        Bohemia, NY 11716

For Defendant:          Beth L. Kaufman, Esq.
                        Alycia Sarah Levy, Esq.
                        Schoeman Updike Kaufman Stern
                           & Ascher, LLP
                        551 Fifth Avenue
                        New York, NY 10176

SEYBERT, District Judge:

           Plaintiff Sandra Brown ("Plaintiff") commenced this

action against her former employer, defendant Northrop Grumman

Systems Corporation, s/h/a Northrop Grumman Corporation,

("Defendant" or "Northrop Grumman"), alleging claims

of: (1) gender discrimination in violation of the Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.,

and the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW

§ 290 et seq.; (2) perceived disability discrimination in violation

of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101

et seq. and the NYSHRL; and (3) retaliation in violation of Title

VII, the NYSHRL, and the Family and Medical Leave Act ("FMLA"), 29
U.S.C. § 2601, et seq. Currently pending before the Court is
Northrop Grumman's motion for summary judgment. (Docket Entry
50.) For the following reasons, Northrop Grumman's motion is
GRANTED.

<u>BACKGROUND</u>

I. <u>Northrop Grumman's Local Civil Rule 56.1 Statement</u>

Before discussing the record in this case, the Court
must address a preliminary argument raised by Plaintiff. Plaintiff
argues that the Court should strike Northrop Grumman's Local Civil
Rule 56.1 Statement because it is not supported by citations to
admissible evidence. (Pl.'s Br., Docket Entry 54-68, at 2-3.)
Plaintiff claims that Northrop Grumman (1) "failed to lay any
foundation for the admissibility of statements contained within
any of the affidavits upon which it relies in support of its
motion," and (2) "ignored relevant testimony on numerous topics,
choosing instead to re-craft its arguments by relying upon self-
serving affidavits undoubtedly generated by counsel." (Pl.'s Br.
at 3.)

Plaintiff's request to strike Northrop Grumman's 56.1
Statement is DENIED. <u>First</u>, with respect to Plaintiff's argument
regarding foundation, "the test of admissibility . . . is whether
a reasonable trier of fact could believe the witness had personal
knowledge" of the facts to which he is testifying. <u>N.Y. ex rel.</u>

Spitzer v. Saint Francis Hosp., 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000). The Court has reviewed Northrop Grumman's affidavits and finds that they meet this admissibility standard. Thus, Plaintiff's request to strike Northrop Grumman's 56.1 Statement is denied to the extent that Plaintiff bases her request on the affiants' lack of personal knowledge. Second, Plaintiff is correct that an affiant may not submit an affidavit contradicting his or hew own prior sworn testimony, but Plaintiff's wholesale request that the Court strike "all paragraphs contained within [Northrop Grumman's] 56.1 Statement which do not include a citation to admissible evidence" is also denied. To the extent that any affidavit contradicts the affiant's prior deposition testimony, it will not be considered by the Court. See Dominick v. Hospitality Valuation Servs., Inc., No. 11-CV-3452, 2013 WL 5460654, at *1 (E.D.N.Y. Sept. 30, 2013). With this in mind, the Court turns to the evidence before it.

II.  Factual Background[1]

This action arises out Plaintiff's employment and subsequent termination as a software engineer for Northrop Grumman. Northrop Grumman claims that Plaintiff "was laid

---

[1] The following facts are drawn from the parties' Local Civil Rule 56.1 Statements ("Def.'s 56.1 Stmt." and "Pl.'s 56.1 Counterstmt.") and their evidence in support. Any factual disputes will be noted.

off . . . because of [a] reduction of work available for her skill set and because the remaining work could be performed by existing staff." (Def.'s 56.1 Stmt., Docket Entry 50-1, ¶ 5.) Plaintiff disputes this, claiming that Northrop Grumman wrongfully terminated her based on gender and perceived disability and also in retaliation for lodging complaints regarding the alleged gender discrimination and for taking medical leave under the FMLA. (Pl.'s 56.1 Counterstmt., Docket Entry 54-69, ¶ 5; Pl.'s Opp. Br., Docket Entry 54-68, at 1.)

A.   Northrop Grumman

Northrop Grumman is a subsidiary of Northrop Grumman Corporation--a provider of manned and unmanned aircraft, space systems, missile systems, and advanced technologies for use in the defense industry. (Def.'s 56.1 Stmt. ¶¶ 1-2.) Plaintiff worked as a software engineer in the Aerospace Systems sector in the Northrop Grumman facility in Bethpage, New York until her termination in July 2011. (Def.'s 56.1 Stmt. ¶¶ 4-5.) Northrop Grumman's Aerospace Systems sector obtains work from customers in the defense industry by submitting proposals to work on particular programs. (Def.'s 56.1 Stmt. ¶ 14.) When and if it is awarded a contract, the customer provides a budget that dictates the number of hours Northrop Grumman may allocate to its employees to complete particular tasks on a that program. (Def.'s 56.1 Stmt. ¶ 15.)

B.  <u>Plaintiff's Employment History and Termination</u>

Northrop Grumman hired Plaintiff as an engineering aide in January 1986.  (Def.'s 56.1 Stmt. ¶ 3.)  At the time of her termination, Plaintiff was a Level 4 Software Engineer in Northrop Grumman's Aerospace Sector.[2]  (Def.'s 56.1 Stmt. ¶ 6.)  As a Level 4 Software Engineer, Plaintiff worked on various contracts, primarily as an Oracle database administrator and developer, (Def.'s 56.1 Stmt. ¶ 10), but she also performed "C" programming on a different software program known as the "line print utility program" (Def.'s 56.1 Stmt. ¶ 12).[3]

From 2005 through 2008, Plaintiff was allocated "full-time hours" to perform Oracle database work on a program referred to as Advanced Hawkeye ("AHE").[4]  (Def.'s 56.1 Stmt. ¶ 18.)  After Northrop Grumman's software engineers set up the Oracle database for the AHE program, however, the program no longer required a full-time employee to perform database development and

---

[2] Software engineers in the Aerospace Systems sector range in title from "Level 1" to "Level 5."  (Def.'s 56.1. Stmt. ¶ 6.)

[3] Northrop Grumman characterizes Plaintiff's "C" programming work as "minimal."  (Def.'s 56. Stmt. ¶ 12.)  Plaintiff does not directly dispute this characterization but notes that "Plaintiff wrote in excess of 200,000 lines of code utilizing 'C' programming."  (Pl.'s 56.1 Counterstmt. ¶ 12.)  In any event, it is undisputed that Plaintiff primarily performed Oracle-based work and some "C" programming work.

[4] Plaintiff also claims that she did some unspecified amount of work on "Delivery Order 1--a task unrelated to AHE."  (Pl.'s 56.1 Counterstmt ¶ 18.)

administration work. (Def.'s 56.1 Stmt. ¶ 23.) The average number of employees working on the AHE program steadily declined between 2005 and 2010 until the program required no more than ten hours per week for Oracle support. (Def.'s 56.1 Stmt. ¶¶ 25-28.) Beginning in October 2008, Plaintiff worked approximately ten hours per week on the AHE program and twenty hours per week performing Oracle-based work on a different program referred to as "A-10." (Def.'s 56.1 Stmt. ¶ 31.)

On July 6, 2009, Northrop Grumman placed Plaintiff on the "release list"--a internal list of employees at risk of running out of sufficient hours for their particular skill sets--because the A-10 program was funded in three to six month intervals, making it unclear to Plaintiff's supervisors whether there would be sufficient Oracle work to support Plaintiff's employment. (Def.'s 56.1 Stmt. ¶¶ 52-54.) On March 18, 2010, Thomas Cunningham ("Cunningham"), Plaintiff's direct supervisor, prepared a Layoff Business Case Analysis that considered Plaintiff and four other Level 4 Software Engineers for layoff. (Cunningham Aff., Docket Entry 50-8, ¶ 37, Ex. P.) The layoff analysis looked at five factors: (1) annual performance ratings, (2) years of service, (3) security clearance, (4) skill rating, and (5) education. (Cunningham Aff. ¶ 40, Ex. P.) Based on these factors, Plaintiff received the lowest rating of the five software engineers considered for layoff. (Cunningham Aff. ¶ 41, Ex. P.) On

September 4, 2010, Cunningham prepared an updated layoff analysis, which included an additional software engineer, and Plaintiff once again ranked the lowest of the six software engineers considered for layoff. (Def.'s 56.1 Stmt. ¶¶ 70-76, Ex. W.) Accordingly, Northrop Grumman selected Plaintiff for layoff effective October 8, 2010. (Cunningham Aff. ¶ 58, Ex. X.)

However, Plaintiff was not laid off at this time, because from 2009 until October 1, 2010, Northrop Grumman continued to receive funding for the A-10 program in four separate one to four month intervals that permitted Plaintiff to continue working twenty hours per week on the program. (Def.'s 56.1 Stmt. ¶ 53; Cunningham Aff. Exs. L-O.) Additionally, in late September 2010, Cunningham located additional work on the AHE program that would provide Plaintiff with thirty hours of Oracle-based work per week for six weeks. (Cunningham Aff. ¶ 59, Ex. Y.) As a result, Northrop Grumman extended Plaintiff's release date to work on that program and then extended it again until February 2011, again until March 2011, and once more until July 1, 2011 as work on additional projects arose. (Cunningham Aff. ¶¶ 60-63, Exs. Y, ZZ, AA-DD.)

On May 3, 2011, Cunningham prepared an updated layoff analysis and submitted it to the human resources department. (Cunningham Aff. Ex. EE.) Thereafter, Cunningham continued to look for work for Plaintiff but claims that he could not find anything to extend her release date. (Cunningham Aff. ¶¶ 65-67,

Ex. FF.) Consequently, Northrop Grumman decided to layoff Plaintiff effective July 6, 2011. (Def.'s 56.1 Stmt. ¶¶ 88-91.) On June 21, 2011, Cunningham and James Morris, Northrop Grumman's Director of Aerospace Systems, notified Plaintiff of her layoff. (Def.'s 56.1 Stmt. ¶ 89.)

C.   Plaintiff's FMLA Requests

Plaintiff suffers from fibromyalgia. (Brown Aff., Docket Entry 54-65, ¶ 13.) In March 2007, Plaintiff submitted an injury report to Northrop Grumman complaining about the setup of her cubicle--specifically, that she had to work between two computer screens placed on different desks in her cubicle. (Sutton Aff., Docket Entry 50-69, Ex. A.) Cunningham assisted in obtaining flat panel monitors for Plaintiff so that she could more easily work between the two computers. (Cunningham Aff. Ex. GG.) In May 2007, Plaintiff claimed that she was still in pain, notwithstanding the flat panel monitors, and requested to be moved to a larger, empty cubicle generally reserved for Level 5 Software Engineers. (Cunningham Aff. ¶¶ 75-76, Ex. GG; Brown Aff. ¶ 14.) Cunningham recommended to his supervisors that Plaintiff be moved to the empty cubicle, and the request was granted. (Cunningham Aff. ¶ 76, Ex. GG.) Plaintiff subsequently requested intermittent medical leave pursuant to the FMLA in 2007, 2008, 2009, and 2010, which were all approved by Northrop Grumman. (Def.'s 56.1 Stmt. ¶¶ 113-17.)

D.  Plaintiff's Complaints

On May 3, 2011, Plaintiff e-mailed Cunningham and two other Northrop Grumman employees, David Crovets ("Crovets") and James LaRosa ("LaRosa"),[5] complaining about e-mails she found inappropriate.  (Def.'s 56. 1 Stmt. ¶ 125; Grevstad Aff., Docket Entry 50-42, Ex. D.)  Plaintiff also sent the e-mail to the human resources department.  Plaintiff's e-mail identified the following three written e-mail comments from LaRosa that Plaintiff believed contained "derogatory comments," "name calling," or "inappropriate text":

> But this mail is typical . . . you answered only the first part and ignored the other two comments.  And, as always, you don't respond to the whole distribution list.
>
> And thanks for the update to the IDR tracker with HE2K MSSS changes you said you would make before you left on vacation.
>
> To be blunt, although I like you as a person, I find you argumentative, non-communicative and almost secretive about things.  And you ignore direction you don't like, case in point is Oracle . . .

(Grevstad Aff. Ex. D (ellipses in original).)  In the e-mail, Plaintiff also stated:  "If I were a man, you would not be treating me this way."  (Grevstad Aff. Ex. D.)

---

[5] Crovets was the technical lead engineer on one of the projects Plaintiff also worked on, and LaRosa was Plaintiff's supervisor on that project.

After receiving the May 3rd e-mail, Northrop Grumman's human resources department began an investigation. At the request of Timothy Grevstad, a Northrop Grumman Human Resources Business Partner, Plaintiff also forwarded additional e-mails the she found inappropriate. (Grevstad Aff. ¶ 10, Ex. J.) On June 15, 2011, Grevstad and Karen Karp, another employee in the human resources department, met with Plaintiff to discuss her complaint. (Def.'s 56.1 Stmt. ¶ 132.) After the meeting, Grevstad concluded that there was no evidence of discrimination (Def.'s 56.1 Stmt. ¶ 134), at which point, Plaintiff informed Grevstad that she would retain outside counsel if she decided to proceed with her claim (Pl.'s 56.1 Counterstmt. ¶ 135.)

Plaintiff commenced this action on March 27, 2012. Northrop Grumman filed its motion for summary judgment on October 28, 2013. (Docket Entry 50.) This motion is currently pending before the Court.

DISCUSSION

Northrop Grumman moves for summary judgment on each of Plaintiff's claims. The Court will first set forth the applicable legal standards before turning to Northrop Grumman's motion more specifically.

I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials

will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41

("[U]nsupported allegations do not create a material issue of

fact.").

## II.  McDonnell Douglas Burden-Shifting Framework

Claims for gender discrimination or retaliation under

Title VII, the ADA, the FMLA, and the NYSHRL[6] are all analyzed

using the burden-shifting framework articulated by the United

States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S.

792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Ruiz v. Cnty. of

Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (Title VII); McBride v.

BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009) (ADA);

Potenza v. City of N.Y., 365 F.3d 165, 167-68 (2d Cir. 2004)

(FMLA).  That framework requires a plaintiff to first establish a

prima facie case, after which the burden shifts to the defendant

to articulate a legitimate, non-discriminatory reason for the

---

[6] Discrimination and retaliation claims under the NYSHRL are
analyzed identically and have the same outcome as their federal
counterparts.  See Hyek v. Field Support Servs., Inc., 461 F.
App'x 59, 60 (2d Cir. 2012) ("Claims brought under the NYSHRL
are analyzed identically and the outcome of an employment
discrimination claim made pursuant to the NYSHRL is the same as
it is under Title VII." (ellipsis omitted) (internal quotation
marks and citation omitted)); Kemp v. Metro-North R.R., 316 F.
App'x 25, 26 (2d Cir. 2009) ("We analyze claims under the NYSHRL
using the same standards that apply to federal civil rights
statutes such as Title VII . . . and the ADA." (citation
omitted)).  Thus, the Court will provide singular discussions
for Plaintiff's NYSHRL claims and their federal counterparts.

adverse employment action. _Holcomb v. Iona Coll._, 521 F.3d 130, 138 (2d Cir. 2008). Once the defendant provides such a reason, the burden shifts back to the plaintiff to present competent evidence that the reasons offered by the defendants were not the true reasons, but were a pretext for discrimination or retaliation. _Fleming v. MaxMara USA, Inc._, 371 F. App'x 115, 117 (2d Cir. 2010); _Leibowitz v. Cornell Univ._, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks and citations omitted), _superseded on other grounds by_ N.Y.C. Local L. No. 85. With this framework in mind, the Court turns to Northrop Grumman's grounds for summary judgment on each of Plaintiff's claims.

## III. Northrop Grumman's Motion

Northrop Grumman moves for summary judgment on each of Plaintiff's claims, arguing that Plaintiff can neither establish her prima facie case nor prove that Northrop Grumman's stated reason for terminating her employment was a pretext for unlawful discrimination or retaliation under the standards governing claims brought pursuant to Title VII, the ADA, the FMLA, and the NYSHRL. As discussed below, the Court finds that summary judgment is appropriate on all claims asserted.

### A. Gender Discrimination

"Title VII prohibits discrimination against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of, _inter alia_,

such individual's sex." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 546 (2d Cir. 2010) (internal quotation marks, ellipsis, and brackets omitted) (quoting 42 U.S.C. § 2000-2(a)(1)).[7]  As previously noted, to survive summary judgment, Plaintiff first must establish a prima facie case of discrimination.  To do so, Plaintiff "must show that '(1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." Cummings-Fowler v. Suffolk Cnty. Cmty. Coll., 981 F. Supp. 2d 124, 138 (E.D.N.Y. 2013) (brackets omitted) (quoting Ruiz, 609 F.3d at 491-92).  "'Although plaintiff's burden at the prima facie stage is minimal, she must provide some competent evidence that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.'" Ellis v. Century 21 Dep't Stores, 975 F. Supp. 2d 244, 266 (E.D.N.Y. 2013) (brackets omitted) (quoting Dent v. U.S. Tennis Ass'n, No. 08-CV-1533, 2011 WL 308417, at *4 (E.D.N.Y. Jan. 27, 2011)).

The first three elements of Plaintiff's prima facie case are not in dispute.  However, Northrop Grumman argues that summary judgment should be granted on Plaintiff's gender discrimination claims because she has not established the fourth element of her

---

[7] The NYSHRL anti-discrimination provision is codified at Section 296 of the New York Executive Law.  N.Y. EXEC. LAW § 296.

prima facie case--that is, that her termination took place under circumstances giving rise to an inference of discrimination. (Def.'s Br., Docket Entry 51, at 6-13.) The Court agrees.

An inference of discrimination "can be established in a variety of ways depending on the specific facts of the case." White v. Andy Frain Servs., Inc., No. 12-CV-5868, 2014 WL 3896066, at *6 (E.D.N.Y. Aug. 8, 2014) (citing Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001); Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996)). A Title VII plaintiff may be able to establish an inference of discrimination by presenting evidence that demonstrates: (1) "'actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus,'" id. (quoting Chertkova, 92 F.3d at 91); (2) that she was "treated differently from other similarly situated employees," id. (citing Abdu-Brisson, 239 F.3d at 468); or (3) that she "was replaced by someone outside [her] protected class," Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001) (citations omitted). However, the plaintiff "'must point to facts that suggest' that the adverse action was motivated, at least in part, by discriminatory animus." Kamrowski v. Morrison Mgmt. Specialist, No. 05-CV-9235, 2010 WL 3932354, at *13 (S.D.N.Y. Sept. 29, 2010) (quoting Kalsi v. N.Y. City Transit Auth., 62 F. Supp. 2d 745, 753 (E.D.N.Y. 1998), aff'd, 189 F.3d 461 (2d Cir. 1999)).

Plaintiff first argues that an inference of discrimination may be drawn because she has presented evidence that her "supervisors, James Morris, Thomas Cunningham and Dave Crovets[,] each harbored discriminatory animus against females." (Pl.'s Br. at 10.)  To support this allegation, Plaintiff relies heavily on her own deposition testimony that LaRosa and Crovets constantly criticized her work during meetings.  (See Pl.'s Br. at 10 (citing Brown Dep. Tr., Docket Entries 54-57 & 54-58, at 145-46).)  However, Plaintiff's testimony fails to establish an inference of discrimination because there is no evidence that LaRosa or Crovets were actually motivated by discriminatory animus other than Plaintiff's own speculation and conjecture.  (See Brown Dep. Tr. at 145 (testifying that she "just felt like [LaRosa and Crovets] wouldn't talk to a man that way").)  Although a plaintiff may demonstrate an inference of discrimination by showing that "the employer criticized the plaintiff's performance in ethnically degrading terms" or "made invidious comments about others in the employee's protected group," "[a] plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn."  Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) (internal quotation marks and citation omitted).  Here, Plaintiff simply fails to provide any evidence linking LaRosa's and Crovet's alleged criticisms of her

workplace performance to gender-based discriminatory animus. Thus, a reasonable juror could not find an inference of discrimination based on this alleged conduct. See Goldman v. Administration for Children's Servs., No. 04-CV-7890, 2007 WL 1552397, at *6 (S.D.N.Y. May 29, 2007); see also Humphries v. City Univ. of N.Y., No. 13-CV-2641, 2013 WL 6196561, at *9 (S.D.N.Y. Nov. 26, 2013). The Court also rejects Plaintiff's argument that there is evidence that Cunningham harbored discriminatory animus in light of the fact that Plaintiff conceded during her deposition that she did not believe "[Cunningham] ever said anything discriminatory to [her]." (Brown Dep. Tr. at 146.)

Plaintiff next argues that discrimination may be inferred because Northrop Grumman "replaced" Plaintiff with someone outside of her protected class. (See Pl.'s Br. at 10-13.) This argument also fails. Plaintiff specifically claims that Northrop Grumman replaced her with Anthony Rocchio ("Rocchio")-- also a Level 4 Software Engineer at the time of Plaintiff's termination--because Northrop Grumman required Plaintiff to train Rocchio in Oracle database work and then assigned a portion of Plaintiff's Oracle-based work to Rocchio after she was terminated. However, it is undisputed that (1) Rocchio was already a software engineer for Northrop Grumman at the time and (2) he only assumed a portion of the company's Oracle-based work in addition to his other preexisting duties and tasks. It is also undisputed that

any other Oracle-based work that arose after Plaintiff's termination was assigned not only to Rocchio, but also to Genevieve Tierney--an existing female software engineer. (<u>See</u> Def.'s 56.1 Stmt. ¶ 102.) Moreover, Northrop Grumman has not hired any new Level 4 Software Engineers in its Aerospace Systems sector since Plaintiff's termination. (<u>See</u> Def.'s 56.1 Stmt. ¶ 100.)

"[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the <u>prima</u> <u>facie</u> stage of the Title VII analysis." <u>Zimmerman</u>, 251 F.3d at 381 (citations omitted). However, "a person is replaced <u>only</u> when another employee is hired or reassigned to perform the plaintiff's duties," but not "when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." <u>Morris v. Northrop Grumman Corp.</u>, 37 F. Supp. 2d 556, 573 (E.D.N.Y. 1999) (emphasis added) (internal quotation marks omitted) (quoting <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 846 (1st Cir. 1993)); <u>accord</u> <u>McKinney v. NXP Semiconductors USA, Inc.</u>, No. 06-CV-7199, 2009 WL 3029537, at *8 (S.D.N.Y. Sept. 22, 2009); <u>McGreevy v. Providence Wash. Ins. Co.</u>, No. 03-CV-0707, 2005 WL 1460428, at *3 (N.D.N.Y. June 20, 2005). Here, the fact that Rocchio was an existing employee who took on some of Plaintiff's Oracle-based work in addition to his own preexisting duties defeats Plaintiff's

claim that she was "replaced" under circumstances giving rise to an inference of discrimination. See McGreevy, 2005 WL 1460428, at *3 (finding no inference of age discrimination where employer "gave a younger employee . . . some of Plaintiff's work after her termination" because the younger employee "was already working for [the employer]"). In addition, the fact that Northrop Grumman assigned some Oracle-based work that arose after Plaintiff's termination to a female software engineer significantly cuts against an inference of gender discrimination. Thus, Plaintiff has not provided any competent evidence to support her claim that Northrop Grumman "replaced" her with a male software engineer other than that she trained Rocchio in Oracle work, which is insufficient alone to give rise to an inference of discrimination. See Morris, 37 F. Supp. 2d at 573 (finding no inference of age discrimination because plaintiff "presented no evidence to support his allegation that [a younger employee] replaced his job other than the fact that he trained him").

Plaintiff next claims that she has raised an inference of discrimination because she was treated differently than Rocchio--a similarly situated male employee. (Pl.'s Br. at 13-16.) This argument fails, however, because there is insufficient evidence in the record to support a conclusion that Plaintiff and Rocchio were actually similarly situated. "A showing of disparate treatment--that is, a showing that an employer treated plaintiff

'less favorably than a similarly situated employee outside [her] protected group'--is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." Ruiz, 609 F.3d at 493 (quoting Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)). "To be deemed similarly situated, individuals must be similarly situated in all material respects." Roa v. Mineta, 51 F. App'x 896, 899 (2d Cir. 2002) (citing Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)). Whether employees are similarly situated in all material respects "varies from case to case but requires a 'reasonably close resemblance of facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical.'" Id. (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)). "Ordinarily, whether other employees are similarly situated is a factual issue that should be submitted to a jury, but 'this rule is not absolute . . . and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.'" Sweeney v. Leone, No. 05-CV-0871, 2006 WL 2246372, at *13 (D. Conn. July 31, 2006) (ellipsis in original) (brackets omitted) (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001)); see also Lugo v. City of N.Y., 518 F. App'x 28, 30 (2d Cir. 2013).

Plaintiff argues that she and Rocchio were similarly situated in "all material respects" because they were both Level 4 Software Engineers at the time of her termination and worked on several projects together. (Pl.'s Br. at 14.) However, "with respect to work duties, the performance of some common tasks does not make jobs substantially equal when material differences also exist," Bush v. Fordam Univ., 452 F. Supp. 2d 394, 410 (S.D.N.Y. 2006) (internal quotation marks and citation omitted), nor is it dispositive that Plaintiff and Rocchio shared the same title and worked in the same department, see Roa, 51 F. App'x at 899. Here, the Court finds that Plaintiff has not raised genuine issues of material fact regarding whether she and Rocchio were similarly situated because the undisputed evidence demonstrates that their duties and responsibilities were materially different. Although they shared some similar skills and the same title, Plaintiff worked as an Oracle database administrator and developer while Rocchio was performing multiple tasks across multiple programs at the time of Plaintiff's termination. (Def.'s 56.1 Stmt. ¶¶ 103-04, 107.) Because Plaintiff has not presented any evidence disputing the facts that she performed Oracle-based work and Rocchio performed different work, she has failed to establish a prima facie case of gender discrimination based on disparate treatment of a similarly situated employee. See Roa, 51 F. App'x at 899.

Finally, Plaintiff also supports her claim of gender discrimination by noting that she "was the only female in her work group and the only one in her group selected for termination." (Pl.'s Br. at 10.) While this may be true, "this, without more, will not support an inference of discrimination." Pearson v. Lynch, No. 10-CV-5119, 2012 WL 983546, at *9 (S.D.N.Y. Mar. 22, 2012); accord Watson v. Arts & Entm't Television Network, No. 04-CV-1932, 2008 WL 793596, at *17 (S.D.N.Y. Mar. 26, 2008), aff'd, 352 F. App'x 475 (2d Cir. 2009); Anderson v. Hertz Corp., 507 F. Supp. 2d 320, 329 (S.D.N.Y. 2007), aff'd, 303 F. App'x 946 (2d Cir. 2008).

In sum, Plaintiff does not offer any evidence to create a genuine issue of material fact regarding whether her supervisors harbored discriminatory animus, whether Northrop Grumman replaced her with someone outside of her protected class, or whether she was treated differently than a similarly situated employee. Thus, Plaintiff has failed make out a prima facie showing of an inference of discrimination, and Northrop Grumman's motion for summary judgment on Plaintiff's gender discrimination claims under Title VII and the NYSHRL is therefore GRANTED.

B.   Perceived Disability Discrimination

"The ADA and its NYSHRL counterpart protect both individuals who are disabled, as well as individuals who may not actually be disabled, but who are regarded as being disabled by

their employer." <u>Sibilla v. Follett Corp.</u>, No. 10-CV-1457, 2012 WL 1077655, at *6 (E.D.N.Y. Mar. 30, 2012) (citing 42 U.S.C. § 12102(1); N.Y. Exec. Law § 292(21)). Again, to survive summary judgment, Plaintiff first must establish a prima facie case of discrimination by showing that: "(1) [Northrop Grumman] is covered by the ADA; (2) [she] suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) [she] was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) [she] suffered an adverse employment action because of [her] disability or perceived disability." <u>Kinneary v. City of N.Y.</u>, 601 F.3d 151, 156 (2d Cir. 2010).

The first and third elements are not in dispute. Rather, Northrop Grumman claims that summary judgment should be granted on Plaintiff's perceived disability discrimination claims because she has not established the second and fourth elements of her prima facie case--namely, that she was regarded as disabled and that Northrop Grumman terminated her employment because of a perceived disability. (Def.'s Br. at 14-17.) As discussed below, although the Court finds that there is sufficient evidence for a reasonable juror to conclude that Cunningham regarded Plaintiff as disabled, Plaintiff has failed to adduce any evidence connecting her termination to a perceived disability.

1.  <u>Whether Plaintiff Was Regarded as Disabled</u>

"Whether an individual is regarded as having a disability depends not on the existence of an actual disability but on the employer's perception of the employee and is a question of intent." <u>Skinner v. City of Amsterdam</u>, 824 F. Supp. 2d 317, 327–28 (N.D.N.Y. 2010) (internal quotation marks and citations omitted). The ADA defines "regarded as" to include an impairment "whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).[8] To survive summary judgment, a plaintiff is "only required to raise a genuine issue of material fact about whether [his employer] regarded [her] as having a . . . physical impairment." <u>Hilton v. Wright</u>, 673 F.3d 120, 129 (2d Cir. 2012).

Northrop Grumman argues that Plaintiff has not established that any individual involved in her termination

---

[8] Prior to the ADA Amendments Act of 2008 ("ADAAA"), which became effective on January 1, 2009, under the ADA, an individual was "regarded as" disabled if the employer perceived her to be disabled as defined under the ADA--namely, that she suffered from an impairment that limited a major life activity. <u>See, e.g.</u>, <u>Montesano v. Westgate Nursing Home, Inc.</u>, 956 F. Supp. 2d 417, 423 (W.D.N.Y. 2013) ("With respect to the major life activity of working, plaintiff must show that defendants regarded her as significantly restricted in her ability to perform a class or a broad range of jobs."). Northrop Grumman acknowledges, and the Court agrees, that the ADAAA applies here since Northrop Grumman's allegedly discriminatory conduct occurred after January 1, 2009, the effective date of the ADAAA. <u>See</u> <u>Carter v. City of Syracuse Sch. Dist.</u>, No. 10-CV-0690, 2012 WL 930798, at *4 n.6 (N.D.N.Y. Mar. 19, 2012).

regarded her as disabled. (Def.'s Br. at 14-16.) The Court disagrees because there is sufficient evidence in the record for a reasonable juror to conclude that Cunningham--an individual at Northrop Grumman who undoubtedly played a role in the decision to terminate Plaintiff--regarded her as having a disability. For example, Cunningham specifically referenced Plaintiff's "disability" during his deposition:

> Q: Why did [Plaintiff] work a reduced schedule?
>
> A: She had medical issues and was allowed to work a reduced schedule.
>
> Q: Do you recall when you just advised me you were notified of [Plaintiff's] family medical leave?
>
> A: There were two instances, the one when she was out on disability, when she was out from June to August, she came back on a reduced schedule. There was another instance, I believe it was in 2007, of the summer of 2007 where she was entitled to 240 hours additional sick time for 2007.

(Cunningham Dep. Tr., Docket Entry 54-59, at 56:16-19, 58:15-17, 58:21-59:3.) In addition, on May 3, 2011, Plaintiff sent Cunningham an e-mail stating that stress at work was "causing [her] fibromyalgia to act up[,] causing [her] excruciating pain." (Zabell Decl., Docket Entry 54, Ex. 1.) Moreover, it is undisputed that Cunningham had approved prior requests for FMLA leave based on Plaintiff's medical condition. Although Northrop Grumman claims that Cunningham "knew only generally that plaintiff had

experienced problems with her back and neck off and on since 2006 or 2007," (Def.'s Br. at 15), the Court finds that the evidence identified above could reasonably support the conclusion that Cunningham regarded Plaintiff as being disabled. Thus, Plaintiff has established this element of her prima facie case.

> 2. Whether Plaintiff Was Terminated "Because of" Her Disability

Nonetheless, Plaintiff's perceived disability discrimination claim fails because Plaintiff has failed to show that she was terminated "because of" her disability. Under the ADA, "[e]stablishing that an individual is 'regarded as having such an impairment' does not, by itself establish liability." Risco v. McHugh, 868 F. Supp. 2d 75, 109 (S.D.N.Y. 2012). Rather, "[l]iability is established under title I of the ADA only when an individual proves that [her employer] discriminated on the basis of disability within the meaning of section 102 of the ADA, 42 U.S.C. 12112." Id. (alteration in original) (citing 29 C.F.R. § 1630.2(l)(3)). Discriminatory intent may be "inferred from the totality of the circumstances, including . . . the historical background of the decision . . . ; the specific sequence of events leading up to the challenged decision . . . ; [and] contemporary statements by members of the decisionmaking body." Kaufman v. Columbia Mem'l Hosp., --- F. Supp. 2d ----, 2014 WL 652886, at *11 (N.D.N.Y. Feb. 19, 2014) (internal quotation marks and citation

omitted) (alterations in original). However, the plaintiff "cannot rely solely on conclusory allegations of discrimination without any concrete evidence to support her claims." Id. (citation omitted)).

Plaintiff argues that she has presented evidence that Northrop Grumman terminated her employment due to a perceived disability because she "felt that [Cunningham] 'blacklisted' her." (Pl.'s Br. at 26.) In support of this claim, Plaintiff first notes that Cunningham marked her personnel file "do not hire" after Northrop Grumman notified Plaintiff that she had been terminated. However, the undisputed evidence makes clear that Cunningham marked Plaintiff's file "do not hire," not because of a perceived disability, but because Plaintiff refused to return her company laptop until she had a chance to download files from it--a violation of company policy. (See Morris Reply Aff., Docket Entry 57-20, ¶¶ 5-7, Exs. B-E; Cunningham Dep. Tr. at 23-24.) Nor can an inference of discrimination be drawn based on the fact that Cunningham "failed to act" on a staffing e-mail indicating a potential need for Level 4 Software Engineers for the ABSAA IPT project since Plaintiff was not qualified to work on that project. (See Perazzo Dep., Docket Entry 54-65, at 67-69.) Finally, that Cunningham would ask Plaintiff what days she was working in a particular week provides absolutely no indication that Cunningham decided to terminate Plaintiff based on a perceived disability.

Simply put, without any concrete evidence to support her claims, Plaintiff is only left with her subjective belief that Cunningham "blacklisted her" because of a perceived disability. This will not defeat summary judgment. See Bonilla v. Boces, No. 06-CV-6542, 2010 WL 3488712, at *7 (W.D.N.Y. Sept. 2, 2010) (holding that plaintiff's "subjective opinions or beliefs [that she was terminated because of her disability were] insufficient to survive summary judgment.").

In sum, Plaintiff does not offer any evidence to create a genuine issue of material fact that Northrop Grumman terminated her employment because of a perceived disability. Thus, Plaintiff has failed to establish an inference of discrimination, and Northrop Grumman's motion for summary judgment on Plaintiff's perceived disability discrimination claims under the ADA and the NYSHRL is therefore GRANTED.

C. Retaliation Under Title VII

Title VII prohibits an employer from retaliating against an employee because she has engaged in protected activity, namely, "oppos[ing] any practice made an unlawful employment practice [under Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The NYSHRL also protects employees against retaliation for protected activities. See N.Y. EXEC. LAW § 296(7). To meet the

initial burden of establishing a prima facie case of retaliation under Title VII, Plaintiff must show that: "(1) [she] was engaged in protected activity; (2) the employer was aware of that activity; (3) [she] suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (citation omitted).

The second and third elements are not in dispute. Northrop Grumman argues that Plaintiff has failed to set forth evidence establishing the first and fourth elements of her prima facie case--namely, that Plaintiff engaged in protected activity and that there was a causal connection between this activity and her termination. The Court agrees with Northrop Grumman.

### 1. Protected Activity

To prove that she engaged in a protected activity, Plaintiff "need not establish that the conduct [she] opposed was in fact a violation of Title VII." Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988) (citation omitted). Rather, Plaintiff need only have a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Id. (internal quotation marks and citation omitted). However, Plaintiff "cannot merely show that she subjectively believed her employer was engaged in unlawful employment practices, but also must demonstrate that her belief

was 'objectively reasonable in light of the facts and record presented.'" Lown v. Salvation Army, Inc., 393 F. Supp. 2d 223, 255 (S.D.N.Y. 2005) (emphasis in original) (quoting Thomas v. Westchester Cnty. Health Care Corp., 232 F. Supp. 2d 273, 279 (S.D.N.Y. 2002)).

Here, Plaintiff claims that she engaged in two forms of protected activity. First, she alleges that she made numerous informal complaints regarding discriminatory conduct directly to her supervisors. (Pl.'s Br. at 28-29.) This portion of Plaintiff's memorandum of law does not specifically identify the conduct underlying these informal complaints. However, as previously noted, in attempting to make out her prima facie case of gender discrimination, Plaintiff claimed that LaRosa and Crovets constantly criticized her work during meetings. To the extent Plaintiff complained about this conduct, the Court finds that such complaints do not constitute protected activity because Plaintiff could not have reasonably believed that such conduct was motivated by gender discrimination. Additionally, to the extent Plaintiff bases her retaliation claim on complaints regarding Cunningham's conduct, that claim also fails because, as previously noted, Plaintiff conceded during her deposition that she did not believe "[Cunningham] ever said anything discriminatory to [her]." (Brown Dep. Tr. at 146.)

<u>Second</u>, Plaintiff contacted the human resources department and then e-mailed a formal complaint on May 3, 2011. (<u>See</u> Grevstad Aff. Ex. D.) As previously noted, in her complaint, Plaintiff identified three written e-mail comments from LaRosa that she believed contained "derogatory comments," "name calling," or "inappropriate text":

> But this mail is typical . . . you answered only the first part and ignored the other two comments. And, as always, you don't respond to the whole distribution list.
>
> And thanks for the update to the IDR tracker with HE2K MSSS changes you said you would make before you left on vacation.
>
> To be blunt, although I like you as a person, I find you argumentative, non-communicative and almost secretive about things. And you ignore direction you don't like, case in point is Oracle . . .

(Grevstad Aff. Ex. D (ellipses in original).) Plaintiff also forwarded to the human resources department additional e-mails from her supervisors that she found inappropriate. (Grevstad Aff. ¶ 10, Ex. J.)

The Court finds that under an objective standard, Plaintiff could not have reasonably believed that she was opposing gender discrimination by complaining about the comments identified in her May 3rd complaint or the additional e-mails she provided to the human resources department. Although Plaintiff's May 3rd complaint states "[i]f I were a man, you would not be treating me

this way," the Court "must look at the substance of her complaint, not the terminology that she used." Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc., 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (citation omitted). The comments Plaintiff complained of constitute general workplace criticism and carry no implication of discriminatory animus whatsoever. Plaintiff argues that her complaints are protected activity because she "clearly testified that she believed she was subject to disparate treatment based upon her gender" and that "the existence of such testimony" requires presentation of this issue to a jury. (Pl.'s Br. at 29.) This argument misses the point. The test is not whether Plaintiff had a good faith belief that a Title VII violation occurred; it is whether Plaintiff had a good faith, objectively reasonable belief. The Court finds that she could not and therefore has not established a prima facie case of retaliation under Title VII.

In sum, because Plaintiff has failed to establish that she engaged in any protected activity with respect to her employment complaints, Plaintiff has failed to make out a prima face case of retaliation based on these complaints, and summary judgment in Northrop Grumman's favor is appropriate.

2. Causal Connection

Regardless, even if Plaintiff's complaints constituted protected activity, her retaliation claims fail for the additional

reason that there is no causal connection between her complaints and Northrop Grumman's decision to terminate her employment.

Plaintiff argues that an inference of retaliation arises because she "was terminated approximately one (1) month after lodging her complaints of unlawful discrimination." (Pl.'s Br. at 31.) Although "[t]emporal proximity between protected activity and adverse action may be sufficient to satisfy the causality element of a prima facie retaliation claim," Kim v. Columbia Univ., 460 F. App'x 23, 25 (2d Cir. 2012), where, as here, "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise," Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001). Here, the record is replete with evidence that Plaintiff's job was in jeopardy due to lack of work beginning in July 2009--nearly two full years before her May 3rd complaint. She was selected for lay off in September 2010 but Northrop Grumman extended her release date on several occasions as additional work for her limited skill set arose. Because the decision to terminate her employment took place before Plaintiff's complaints, there can be no causal connection between them.

In sum, Plaintiff does not offer any evidence to create a genuine issue of material fact that Plaintiff engaged in protected activity or that Northrop Grumman's decision to terminate her was in retaliation for her complaints. Accordingly,

Northrop Grumman's motion for summary judgment on Plaintiff's retaliation claims under Title VII and the NYSHRL is GRANTED.

D.   FMLA Retaliation

Finally, Northrop Grumman moves for summary judgment on Plaintiff's FMLA retaliation claim.   Specifically, Plaintiff claims that Northrop Grumman unlawfully terminated her for taking intermittent FMLA leave in 2010.   As discussed below, although Plaintiff has raised genuine issues of fact regarding her prima facie case of FMLA retaliation, summary judgment is nonetheless appropriate because Plaintiff has not raised any genuine issues of material fact regarding Northrop Grumman's motive for terminating her.

1.   Prima Facie Case

To make out a prima facie case of retaliation under the FMLA, Plaintiff "must establish that: 1) [she] exercised rights protected under the FMLA; 2) [she] was qualified for his position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Potenza, 365 F.3d at 168.   The second and third elements are not in dispute.   However, Northrop Grumman argues that Plaintiff has not established the first and fourth elements.

a)   <u>Whether Plaintiff Exercised FMLA Rights</u>

Northrop Grumman argues that Plaintiff cannot demonstrate that she exercised FMLA rights because she failed to submit proper medical certification to support her request for intermittent leave in 2010.  (Def.'s Br. at 24-26.)  The Court disagrees.

The Second Circuit "has not yet directly addressed whether employees must prove they were entitled to FMLA leave to satisfy the first element of a prima facie case of [FMLA retaliation] . . . ."  <u>Kim v. Goldberg, Weprin, Finkel Goldstein, LLP</u>, 862 F. Supp. 2d 311, 318 (S.D.N.Y. 2012).  However, several district courts in this Circuit "have uniformly held that proving entitlement [to FMLA leave] is a necessary prerequisite to a valid FMLA retaliation claim."  <u>Id.</u> (collecting cases).  Northrop Grumman claims that in early 2010, it granted Plaintiff's request for intermittent FMLA leave indefinitely even though Plaintiff did not provide medical documentation because Plaintiff's manager determined that he could accommodate Plaintiff's reduced schedule of thirty hours per week.  (Def.'s 56.1 Stmt. ¶ 117.)  In response, Plaintiff submits an affidavit attaching "a completed certification of [her] health care provider submitted in connection with [her] 2010 period of intermittent FMLA."  (Brown Aff. ¶ 15, Ex. A.)  Plaintiff's affidavit testimony that she

provided this medical certification[9] is sufficient to create a genuine issue of material fact as to whether Plaintiff was actually entitled to FMLA leave and whether she actually provided medical documentation in connection with her request in 2010.    Summary judgment is therefore inappropriate in this regard.

b)    Inference of Retaliatory Intent

Northrop Grumman next argues that Plaintiff has failed to establish that her termination occurred under circumstances giving rise to an inference of retaliatory intent.    (Def.'s Br. at 26-28.)    The Court disagrees.

The Second Circuit has stated that "a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'"    Gorman-Bakos v. Cornell Co-op Extension of Schenectady

---

[9] Plaintiff alleges that Northrop Grumman failed to produce this medical certification, as well as an IRS Form W-2 issued by Northrop Grumman's disability insurance company.    (Pl.'s Br. at 5.)    Plaintiff claims that she is therefore entitled to an adverse inference that this "destroyed and/or missing evidence" supports Plaintiff's disability and FMLA claims.    (Pl.'s Br. at 7.)    Since the Court has found in Plaintiff's favor on the portions of her claims for which these documents are potentially relevant--that is, whether Northrop Grumman regarded Plaintiff as disabled and whether Plaintiff exercised FMLA leave in 2010-- Plaintiff's request for an adverse inference is DENIED AS MOOT. However, the Court notes that given the seriousness of Plaintiff's charge, there is a surprising lack of evidence to support an inference that Northrop Grumman failed to preserve documents.

Cnty., 252 F.3d 545, 554 (2d Cir. 2001) (alteration in original) (quoting Reed, 95 F.3d at 1178); Donnelly v. Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 152 (2d Cir. 2012); Terry v. Cnty. of Cayuga, No. 11-CV-1296, 2013 WL 5464395, at *5 (N.D.N.Y. Sept. 30, 2013). Here, Plaintiff is able to satisfy the fourth element of her prima facie case because of the temporal proximity between her taking FMLA leave and her termination. It is undisputed that Northrop Grumman granted Plaintiff indefinite FMLA leave in 2010. Although the record indicates that Plaintiff worked some full-time weeks in 2011, (see Brown Dep. Tr. at 46), Northrop Grumman has not presented any concrete evidence that Plaintiff's FMLA leave had expired. Thus, Plaintiff has produced evidence that could support the conclusion that she was terminated while she was on FMLA leave. This is sufficient to withstand summary judgment.

   2. Pretext

   Finally, although Plaintiff has presented enough evidence to raise genuine issues of material fact with respect to her prima facie case of FMLA retaliation, she does not provide any evidence from which a reasonable juror could conclude that Northrop Grumman's explanation for her termination was merely a pretext for an unlawful retaliatory motive. As noted, once Plaintiff establishes her prima facie case of FMLA retaliation, the burden shifts to Northrop Grumman to articulate "a legitimate, non-discriminatory reason" for terminating Plaintiff. Here, Northrop

Grumman has come forward with evidence that Plaintiff was terminated because of a reduction of work available for her skill set, *i.e.*, Oracle-based work, and because any such work could be performed by existing employees. This evidence is sufficient to shift the burden back to Plaintiff to demonstrate that Northrop Grumman's stated reasons for her termination are a pretext for retaliation.

The Court pauses for a moment to address the proper standard of causation to apply at this stage. Northrop Grumman argues that Plaintiff must establish that the protected activity--*i.e.*, Plaintiff's FMLA leave--was the "but-for" cause of her termination, not just a motivating factor in Northrop Grumman's decision to terminate her. (Def.'s Br. at 28.) In support of this argument, Northrop Grumman relies on the United States Supreme Court's recent decision in <u>University of Southwest Medical Center v. Nassar</u>, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013), where the Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test" applied to status-based discrimination claims under Title VII. 133 S. Ct. at 2533. Prior to <u>Nassar</u>, courts in this Circuit consistently held that a plaintiff asserting a retaliation claim under the FMLA needed to prove only that the FMLA leave was a motivating factor in the employer's adverse employment action, not that it was the only reason. <u>See, e.g.</u>,

Ridgeway v. Royal Bank of Scotland Grp., No. 11-CV-0976, 2013 WL 1985016, at *20 (D. Conn. May 13, 2013) ("To defeat summary judgment, plaintiff need not show that defendant's proffered reason was false or played no role in the decision to terminate him, but only that it was not the only reason, and that h[is] filing for FMLA leave was at least one motivating factor." (alteration in original)); Mullins v. Bondib Hotels, Inc., No. 10-CV-4069, 2011 WL 6434328, at *6 (S.D.N.Y. Dec. 22, 2011).

However, since Nassar, courts within and without this Circuit have questioned whether the "but-for" causation standard should now apply to FMLA retaliation claims, with varying results. Some courts have held that Nassar did not change the causation standard for FMLA retaliation claims. See, e.g., Chaney v. Eberspaecher N. Am., 955 F. Supp. 2d 811, 813 n.1 (E.D. Mich. 2013). Other courts have applied the "but-for" standard to FMLA retaliation claims. See, e.g., Sparks v. Sunshine Mills, Inc., No. 12-CV-2544, 2013 WL 4760964, at *17 n. 4 (N.D. Ala. Sept. 4, 2013). Finally, a fair number of courts, including the courts in this Circuit that have addressed the issue, have recognized, but declined to decide the issue, either because summary judgment was appropriate under the less stringent "motivating factor" standard or because there were genuine issues of material fact under the "but-for" standard. Compare Wanamaker v. Town of Westport Bd. of Educ., --- F. Supp. 2d ----, 2014 WL 1281937, at *18 (D. Conn.

Mar. 27, 2014) (finding triable issues of fact under the "motivating factor" standard) with Slade v. Alfred Univ., No. 11-CV-0396, 2013 WL 6081710, at *2 (W.D.N.Y. Nov. 19, 2013) (finding triable issues of fact under the "but-for" standard). As discussed below, because the Court finds no genuine issues of material fact as to whether Plaintiff's FMLA leave was a "motivating factor" in Northrop Grumman's decision to terminate her, the Court need not answer whether the "but-for" standard applies to FMLA retaliation cases.

Plaintiff argues that there are genuine issues of material fact regarding whether Northrop Grumman's stated reason for her termination was a pretext for retaliation because: (1) contrary to Northrop Grumman's stated reason, there was no reduction of Oracle-based work; (2) Plaintiff's layoff notice referred to her as a Level 5 Software Engineer when she actually was a Level 4 Software Engineer; and (3) when Cunningham conducted Northrop Grumman's layoff analysis in 2011, he did not check the company's XREF system[10] to determine Plaintiff's skill, and the last time he had was in early 2010, thereby failing to consider the fifth factor of the company's layoff analysis, Plaintiff's education. (Pl.'s Br. at 17-21.)

---

[10] The XREF System is a central repository that allows Northrop Grumman's employees to record their skills, qualifications, and experiences.

Plaintiff has not raised a triable issue of fact here. First, that Plaintiff had work on the day she was notified of her termination and that there was Oracle-based work available after Plaintiff's termination does not create a triable issue of fact as to whether there was a reduction in Oracle-based work. Northrop Grumman decided to terminate Plaintiff because it determined that its other, existing software engineers could perform its Oracle-based work in addition to their preexisting duties. Even if, as Plaintiff contends, she had superior Oracle skills than these employees, "courts and juries do not operate as 'super-personnel department[s]' to question a company's staffing decisions." Diello v. Potter, 697 F. Supp. 2d 410, 413 (W.D.N.Y. 2010) (alteration in original), aff'd 413 F. App'x 344 (2d Cir. 2011). Second, the Court fails to see the relevance of the fact that Plaintiff's layoff notice incorrectly referred to her as a Level 5 Software Engineer. It is true that Cunningham could not explain this discrepancy during his deposition, most likely because it was a typographical error, but the bottom line is that there really is no dispute regarding Plaintiff's position or whether she was compared against other Level 4 Software Engineers for layoff. Third, that Cunningham did not consult the XREF system in 2011 is not material because Cunningham was familiar with Plaintiff's skill set without having to consult the XREF system. But more importantly, Plaintiff last updated the XREF system on February 3,

2009, (see Morris Reply Aff. ¶ 4), well before the last time Cunningham consulted it, so Plaintiff was not subject to a four-factor analysis, as she contends. Thus, the only evidence Plaintiff submits to support her FMLA retaliation claim is temporal proximity, which alone does not create a triable issue of fact as to pretext. Colombo v. E. Irondequoit Cent. Sch., No. 07-CV-6270, 2010 WL 6004378, *14 (W.D.N.Y. Dec. 17, 2010) ("[T]emporal proximity, standing alone, is insufficient to create a triable issue of fact as to pretext." (citation omitted)).

In sum, although Plaintiff can establish a prima facie case of FMLA retaliation based on the temporal proximity between her taking leave and her termination, Plaintiff has not come forward with sufficient evidence to defeat Northrop Grumman's stated reasons for her termination. Accordingly, Northrop Grumman's motion for summary judgment on Plaintiff's FMLA retaliation claim is GRANTED.

[REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY]

<u>CONCLUSION</u>

For the foregoing reasons, Northrop Grumman's motion for summary judgment is GRANTED.  The Clerk of the Court is directed to enter judgment accordingly and CLOSE this case.

SO ORDERED.

/S/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    August _ 19 _, 2014
          Central Islip, NY